Roland J. WHITE, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18171.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 25, 1964.

Decided April 15, 1965.

Petition for Rehearing En Banc and for Rehearing before the Division Denied June 29, 1965.

Fahy, Circuit Judge, dissented.

Mr. Benjamin W. Cotten (appointed by this court), Washington, D. C., for appellant.

Mr. Norman Sepenuk, Attorney, Department of Justice, with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker, Harold H. Titus, Jr., Asst. U. S. Attys., and Joseph M. Howard, Attorney, Department of Justice, were on the brief, for appellee.

Before WILBUR K. MILLER, Senior Circuit Judge, and FAHY and DANAHER, Circuit Judges.

DANAHER, Circuit Judge:

Convicted on two counts of violations of the federal narcotics laws this appellant here alleges that a quantity of drugs erroneously had been received in evidence

against him. He argues that (1) a search warrant had been issued without an adequate showing of probable cause, and in any event, (2) the contraband had been seized illegally because of the manner in which the search warrant had been executed.

I

 The United States Commissioner had issued a search warrant directing the officers to search the appellant's apartment No. 33 at 604—46th Place, S. E. in the District of Columbia. The premises according to affidavits before the Commissioner had been kept under surveillance for a period of some two weeks following complaints that this previously convicted appellant was selling narcotics at his apartment. Detective Aiken's affidavit disclosed the results of his own personal observations, details as to which need no present reproduction. We note only that the facts adequately met the standards spelled out in United States v. Ventresca [1] and amply justified the Commissioner's conclusion that probable cause existed for the issuance of the search warrant. The District Court did not err in so deciding.

II

Appellant contends principally that the District Court erred in denying his pretrial motion to suppress after a hearing at which he contended that the officers had not complied with the provisions of 18 U.S.C. § 3109 (1965). The trial judge could have found that as the officers approached the appellant's apartment, the door was partly opened as the appellant's 8-year-old son was about to enter the hallway. An officer asked if Roland White or his wife was at home. The boy answered affirmatively and opened the door wider. An officer then saw Mrs. White to whom he showed his badge.

1. 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). See generally Jones v. United States, 362 U.S. 257, 270–272, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Rugendorf v. United States, 376 U.S. 528, 533, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); Irby v. United States, 114 U.S. App.D.C. 246, 314 F.2d 251, cert. denied, 374 U.S. 842, 83 S.Ct. 1900, 10 L.Ed.2d 1064 (1963); Walker v. United States, 117 U.S.App.D.C. 151, 327 F.2d 597, rehearing en banc denied, 117 U.S. App.D.C. 154, 327 F.2d 600 (1963), cert. denied, 377 U.S. 956, 84 S.Ct. 1635, 12 L.Ed.2d 500 (1964).

He told her he had a search warrant for the apartment.

"When you said that, where were you standing at that time?

"A. I was still standing in the doorway.[2]

"Q. In the doorway?

"A. Yes, sir.

"Q. Were you inside the apartment or in the doorway?

"A. I was in the doorway itself.

"Q. Not inside the apartment?

"A. No, sir."

An officer then walked over to Mrs. White and asked her if she had narcotics in the place and "she said that White, this man, was handling everything here, she didn't have anything to do with anything."

Such was the setting in which we are asked to say that the entry into the appellant's apartment was unlawful. Many cases demonstrate that some overzealous officers, more often than should be so, have broken into dwellings when lacking search warrants; in trying to effectuate arrests, they have broken doors without warning; they even have conducted unlawful raids in the night season. The courts have steadfastly and properly refused to tolerate[3] illegal searches of private dwellings. Where, on the other

hand, the officers have sought to conform their conduct with what the Constitution requires, the Court has said "It is vital that having done so their actions should be sustained under a system of justice responsive both to the needs of individual liberty and the rights of the community." [4]

■ Here the entry occurred at 2 o'clock in the afternoon. The officers had a valid search warrant based upon a surveillance and observations of two weeks. The apartment door by sheer fortuity, was open at least part way as the officers approached, and was then opened further as the boy stepped back into the room, thus disclosing the presence of Mrs. White. The officers identified themselves and announced that they were there with a search warrant. To repeat in part, the officer was not then inside the apartment. He was at the doorway, with his foot "in the doorway," [5] "the little piece that comes across the door." We have been asked to hold as a matter of law that an officer, merely standing as described—by that very act—while announcing his identity and purpose, had unlawfully broken into White's apartment. We of the majority decline to do so.[6]

Here, we have no problem as to probable cause which had already been de-

---

2. On cross examination by appellant's trial counsel, the officer explained that "When I say doorway, I mean the little piece that comes across the door." At the conclusion of the taking of testimony the judge in colloquy with appellant's trial counsel said, as the transcript shows:

"The Court: Let's get the record clear now. Did the officer testify that he went in?

[Counsel]: "He testified he put his foot in.

"The Court: That is in the doorway?

[Counsel]: "Yes.

"The Court: All right. Now, where did he stand?

[Counsel]: "The officer? That is where he said he stood, he put his foot inside the doorway.

"The Court: We agree that the testimony was that he said that he stood, that he did not enter the apartment ex-

cept for placing his foot in the doorway?

[Counsel]: "I believe that was his testimony.

"The Court: All right. You may proceed."

3. An illustrative collection of cases appears in Williams v. United States, 105 U.S.App.D.C. 41, 45, 263 F.2d 487, 491 (concurring opinion) (1959). And see as to Fourth Amendment standards of "reasonableness," Ker v. State of California, 374 U.S. 23, 37–43, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

4. United States v. Ventresca, *supra*, 380 U.S. at 112, 85 S.Ct. at 748.

5. See note 2 *supra*.

6. Let it be noted specifically that we do not rest our position upon any "consent" to enter, either expressly or impliedly to be attributed to the 8-year-old boy.

termined by the United States Commissioner when he issued a valid search warrant. Concededly, the requisite announcement of identity and purpose had been given.[7]

■ Title 18 U.S.C. § 3109 (1965) provides that under the circumstances there delimited, an "officer may break open any * * * door * * * to execute a search warrant * * *." The section does not prohibit action, it specifically permits violence.[8] Its requirement of announcement of identification and purpose was recognized by Mr. Justice Brennan in Miller v. United States, *supra* note 7, as "a safeguard for the police themselves who might be mistaken for prowlers and be shot down by a fearful householder." 357 U.S. at 313, 78 S.Ct. at 1198. Obviously, there was here no breaking open, of a door, of any part of the house or of anything therein.

Nor do we here have a situation such as had been disclosed in Keiningham v. United States.[9] There the officers had a search warrant, to be sure, but it had been issued to authorize the search of a residence at 1106—18th Street, N.W., one of a series of row houses. They had no search warrant for the dwelling next door, known as 1108—18th Street. The

adjoining row houses had been so constructed that partitions separated the upper rear porches of each of the houses. The officers lawfully entered the premises known as 1106 but found no one. They did not stop there. Instead, without announcement of any kind, they opened the porch door leading to the porch of 1108. They crossed that porch and approached the entrance to 1108. Only then did the police announce their identity, and they thereupon forced open the door at 1108. Under such circumstances, a majority said, quite apart from its dictum: "*We hold that the officers 'entered' 1108 when they passed through the door in the partition,* [separating the two houses] and we decide these cases *on the narrow ground* that an announcement, at least, was *required at that time.*"[10] (Emphasis added.)

■ Some courts have discussed a person's right of privacy as though it were an absolute, to be protected at all events. Of course that is not so. The householder's right is shielded by the Fourth Amendment, but when the established requirements have been met,[11] the public right is paramount.

So, too, Mr. Justice Brennan saw 18 U.S.C. § 3109 as congressional recogni-

7. Thus we have no such problem as in Accarino v. United States, 85 U.S.App.D.C. 394, 403, 179 F.2d 456, 465 (1949), where we said:
 "Before an officer can break open a door to a home, he must make known the cause of his demand for entry. There is no claim * * * that the officers advised the suspect of the cause of their demand before they broke down the door. Upon that clear ground alone, the breaking of the door was unlawful * * *."
 Referring to the rule of Accarino, Mr. Justice Brennan in Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), said:
 "The rule seems to require notice in the form of an express announcement by the officers of their purpose for demanding admission. The burden of making an express announcement is certainly slight. A few more words by the officers would have satisfied the requirement in this case." 357 U.S. at 309–310, 78 S.Ct. at 1196.

8. See Jones v. United States (*en banc* after remand), *supra* note 1, 113 U.S.App. D.C. 14, 17, 304 F.2d 381, 384, cert. denied, 371 U.S. 852, 83 S.Ct. 73, 9 L.Ed.2d 88 (1962).

9. 109 U.S.App.D.C. 272, 287 F.2d 126 (1960).

10. *Id.* at 276, 287 F.2d at 130. The majority there observed: "As was said by the Supreme Court in Miller, supra, and by this court in Accarino v. United States, it is 18 U.S.C. § 3109 which defines the duties of officers executing warrants." *Ibid.*

11. Mr. Justice Brennan dissenting in Ker v. State of California, *supra* note 3, 374 U.S. at 47, 83 S.Ct. at 1636, lists certain exceptions to the basic rule applicable to an unannounced police intrusion into a private home, including the situation "where the persons within already know of the officers' authority and purpose"; and see his further like comment, 374 U. S. at 54, 83 S.Ct. 1623.

tion of the "requirement of prior notice of authority and purpose before forcing entry into a home * * *."[12] Thus even though section 3109 did not apply to the warrantless violent breaking in *Miller*, the Court "drew upon [an] analogy"[13] to that statute found in our *Accarino* rule, *supra* note 7. The Court obviously deemed the householder's "awareness" or lack of it to be controlling in terms of whether or not the right of privacy must yield. The Court's holding in *Miller* accordingly was specific: "The petitioner could not be lawfully arrested in his home by officers breaking in without first giving him notice of their authority and purpose."[14]

In our case every *reason* for the exclusionary rule in *Miller*, just as in section 3109 situations, was fully satisfied. The officer was not inside the apartment. The door was open. He saw Mrs. White, showed her his badge and told her he had a search warrant for the premises. At that moment as defense counsel and the judge agreed, *supra* note 2, the officer stood, he did not enter the apartment except for placing his foot on the threshold.[15]

We hold on such facts[16] that there was no such unannounced breaking as to invalidate the entry which was made subsequent to the notice of "authority and purpose." The trial judge did not err in his denial of the motion to suppress.

Affirmed.

12. Miller v. United States, *supra* note 7, 357 U.S. at 313, 78 S.Ct. at 1198; and see Blakey, *The Rule of Announcement and Unlawful Entry: Miller v. United States and Ker v. California*, 112 U.PA.L.REV. 499, 546 (1964).

13. Ker v. State of California, *supra* note 3, 374 U.S. at 53, 83 S.Ct. 1623.

14. Miller v. United States, *supra* note 7, 357 U.S. at 313, 78 S.Ct. at 1198; Keiningham v. United States, *supra* note 6.

15. In Wong Sun v. United States, 371 U.S. 471, 482, 83 S.Ct. 407, 414, 9 L.Ed.2d 441

FAHY, Circuit Judge (dissenting):

I agree that the search warrant was validly issued but I dissent because of the manner in which it was executed.

18 U.S.C. § 3109 provides:

"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance * * *."

In Keiningham v. United States, 109 U.S.App.D.C. 272, 287 F.2d 126, the officers had an arrest warrant, and also a search warrant for premises No. 1106. Those premises adjoined premises No. 1108 and a door from the former led to the latter. The officers entered No. 1108 through the door and searched those premises. This court held the search unlawful and the evidence procured thereby inadmissible, saying,

"Since the entry into 1108 was made without permission and was not preceded by an announcement, that entry was improper and the search which followed that improper entry cannot be upheld even if the search would otherwise have been valid. * * * We think that a person's right to privacy in his home (and the limitation of authority to a searching police officer) is governed by something more than the fortuitous circumstance of an unlocked door, and that the word 'break' as used in 18 U.S.C. § 3109, means 'enter without permission.' We think

(1963), Mr. Justice Brennan explained that 18 U.S.C. § 3109 "requires that an officer must state his authority and his purpose at the threshold, and be refused admittance, *before he may break open the door*." (Emphasis supplied.)

16. "As Miller v. United States * * * demonstrated, a claim under 18 U.S.C. § 3109 depends upon the particular circumstances surrounding the execution of the warrant." Jones v. United States, *supra* note 1, 362 U.S. at 272, 80 S.Ct. at 737.

that a 'peaceful' entry which does not violate the provisions of § 3109 must be a permissive one, and not merely one which does not result in a breaking of parts of the house. We hold that the officers 'entered' 1108 when they passed through the door in the partition, and we decide these cases on the narrow ground that an announcement, at least, was required at that time."

109 U.S.App.D.C. at 276, 287 F.2d at 130.

In our case the officers entered "without permission." The "permission" granted by the eight year old boy did not give leave to the officers to enter and search.[1] And the subsequent entry through the partially open door, being without permission, constituted a violation of Section 3109. It seems to me to be indisputable from the evidence that Officer Aiken, who first entered the apartment, did so before announcing his authority and purpose and without opportunity for his admittance to be refused. See 18 U.S.C. § 3109, *supra*. Therefore, as in *Keiningham*, I think the consequent search was unlawful and the evidence thereby secured should have been excluded. I accordingly would reverse and remand.

I construe the placing of his foot in the door by Officer Aiken, as described in the Appendix to this opinion, as an entry on his part. He stood in the doorway with his foot in the door, "the little piece that comes across the door." In answering a question by the Judge, he described it this way: "I stepped—I put my foot in the doorway." In *Keiningham*, as we have seen, the entry was made by opening a door. Here it was made by the officer placing himself in the doorway so as to maintain his presence in the apartment, though he had not complied with Section 3109. From a legal standpoint this seems to me the same as though he had walked into the apartment without complying. I cannot read the record, as my brethren do, as showing that when the officer spoke to Mrs. White he was not inside the apartment, if by this it is meant that he had not entered. Before speaking to her he used a well known method of entering and of making his entry good against possible opposition. I should think any of us would consider such action of an officer at our front door as an entry into the house.

As applied to our case Section 3109 required the officer to remain outside at the threshold until he had made his announcement. Otherwise the entry without permission could not possibly afford the required opportunity for admittance to be refused.[2]

The fact that the entry in this case was peaceful does not render it lawful. *Keiningham, supra.* Nor does the fact that the door was partially open remove the necessity for complying with the procedures imposed by law prior to entering without permission. A person's right to privacy within his home is governed by something more than the fortuitous circumstance of a partially open door. *Keiningham, supra.* Moreover, the absence of a search warrant for premises No. 1108 in *Keiningham* does not affect the application of that case to our situation; for the entry there was held unlawful because made without permission and without an announcement, not because the officers had no warrant. Nor can the entry in *Keiningham* be termed

---

1. The officers were not in uniform, were not known to the boy to be officers, their mission was also unknown to him, and in any event his natural and innocent courtesy in response to their inquiry cannot transform an otherwise unlawful entry into a permissive one for the execution of an undisclosed search warrant.

2. Refusal of admittance has been formalized in the cases construing Section 3109 so as to require a certain amount of time to elapse between the announcement and the actual entry. See Masiello v. United States, 113 U.S.App.D.C. 32, 33, 304 F.2d 399, 400, and the appeal after remand, 115 U.S.App.D.C. 57, 58, 317 F.2d 121, 122; Munoz v. United States, 325 F.2d 23, 26 (9th Cir.); United States v. Poppitt, 227 F.Supp. 73, 80 (D.Del.); United States v. Barrow, 212 F.Supp. 837, 846 (E.D.Pa.).

a forceful one; our court did not so characterize the opening and passing through the door.

Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332, referred to by my brethren, I suggest affords no support to their opinion.[3] The evidence involved in *Miller* was suppressed as the fruit of an illegal arrest traceable to an illegal entry. The Court applied the criteria of Section 3109. Its requirements not having been met the entry was held to be unlawful. True, it was a forceful entry, but the holding that it was unlawful was not based on that. It was based on the absence of notice which met the requirements of Section 3109. Compare Ker v. State of California, 374 U.S. 23, 46, 83 S.Ct. 1623, 10 L.Ed.2d 726, where the problem is recognized as one of unannounced police intrusions. (Opinion of Mr. Justice Brennan.) [4]

Section 3109 sets forth conditions under which force may be used in executing a warrant. It does not, however, authorize a peaceful entry to execute a warrant without compliance with the same conditions which permit the use of force.

"Even if probable cause exists for the arrest of a person within, the Fourth Amendment is violated by an unannounced police intrusion into a private home, with or without an arrest warrant, except (1) where the persons within already know of the officers' authority and purpose, or (2) where the officers are justified in the belief that persons within are in imminent peril of bodily harm, or (3) where those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door), are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted."

Ker v. State of California, *supra* at 47, 83 S.Ct. 1623, 1636 (opinion of Mr. Justice Brennan). The opinion of Mr. Justice Clark, which, with the concurrence on a different ground by Mr. Justice Harlan, prevailed in *Ker*, found that the unannounced character of the entry did not render the resulting arrest and search unreasonable; but the opinion rests upon an exception recognized by California decisions, based upon the likelihood in the particular circumstances that evidence would be destroyed. Mr. Justice Clark states, "Here * * * the criteria under California law clearly include an exception to the notice requirement where exigent circumstances are present." 374 U.S. at 39, 83 S.Ct. at 1633. No exigent circumstances are relied upon by my brethren in support of the reasonableness of the entry in our case.

I would reach the same result in this case were I to consider the question without the benefit of Section 3109; that is, were I required to determine whether the search was an unreasonable one under the Fourth Amendment unaided by Section 3109. On the surface it might seem that in all the circumstances disclosed by this record the search was not unreasonable. I am unable so to conclude because to do so would involve, if my view of the facts is correct, an abandonment of the necessity, in determining reasonableness, of notice and opportunity for persons within a private home to consent to or refuse admission, prior to entry therein

3. The recent decision of the Supreme Court in United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684, also referred to by my brethren, was not concerned with the manner of executing a warrant—our question—but with the procurement of the warrant, as to the validity of which we are agreed in this case.

4. Apart from Section 3109, intrusions of privacy such as "peering through a window" which furnish probable cause for arrest without a warrant have been found to be violative of the Fourth Amendment. See People of State of California v. Hurst, 325 F.2d 891 (9th Cir.), (cert. applied for and pending, 85 S.Ct. 1796); Brock v. United States, 223 F.2d 681 (5th Cir.). And see also McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153.

by a police officer. These I think are requirements of reasonableness, unless the situation comes within an exception such as the Court found in Ker v. State of California.

*Appendix*

[Cross examination by the Assistant United States Attorney, Mr. Titus, of Officer Aiken, who first entered the apartment.]

"Q. What did you do when you arrived at the apartment, tell us the whole sequence, but briefly.

"A. It was a young boy that later was identified as the son of Roland and Mrs. White, he opened the door and—

"Q. How did it come about that he opened the door?

"A. As we came up, he was opening the door, he was coming out.

"Q. He was coming cut?

"A. He was coming out of the apartment and at that time we asked him was Roland there and we wanted to see Roland White and his wife, and he opened the door, he said, 'Come in.'

"Q. The boy said, 'Come in'?

"A. That is right, he opened the door and said, 'Come in.'

"Q. You had just seen him coming out of the apartment?

"A. He was getting ready to come out, he opened the door and was standing in the hallway when we came up.

"Q. Was the door open when you came up?

"A. Yes, sir.

"Q. What did the boy say?

"A. He stepped back and said, 'Come on in.' At this time, as soon as the door opened, we could see into the apartment, Officer Somerville and I, I was the first one, I identified myself as a police officer and I stated I had a search warrant for the premises.

"Q. Who did you identify yourself to?

"A. I identified myself to Mrs. White, I saw her first.

"Q. Where was she?

"A. She was standing to my left, from about here to you.

"Q. Inside the apartment?

"A. Inside the apartment.

"Q. When you made your identification of yourself as a police officer, what else did you say?

"A. I showed my badge and I told her I had a search warrant.

"Q. For the apartment?

"A. Yes, sir.

"Q. When you said that, where were you standing at that time?

"A. It was still standing in the doorway.

"Q. In the doorway?

"A. Yes, sir.

"Q. Were you inside the apartment or in the doorway?

"A. I was in the doorway itself.

"Q. Not inside the apartment?

"A. No, sir."

[Redirect examination by counsel for defendant, Mr. Gentry.]

"Q. You say when you approached the apartment, a boy was coming out?

"A. Yes, sir.

"Q. Was he outside?

"A. He was just coming out the door, in fact he hadn't closed the door when we came up.

"A. We were in the doorway when the boy opened the door, I put my foot in the door and at that time, I told him I was the police—when I say doorway, I mean the little piece that comes across the door, and told them I was a police officer and I had a search warrant.

"Q. No one inside the apartment invited you in, is that correct?

"A. Other than the boy, the young boy that just opened the door

and was going out, he told us to come in.

"Q. What did you tell this little boy?

"A. When he said come in?

"Q. Before he said come in?

"A. The only thing, I asked him was White or Mrs. White home and he just opened the door. He said yes, and opened the door and said, 'Come on in.'

"Q. Did you tell him who you were?

"A. Not immediately.

"Q. Were you in uniform?

"A. No, sir.

"Q. Was Detective Somerville in uniform?

"A. No, sir.

"Q. Were these the only two detectives present?

"A. At this particular time, Somerville and I were the only two who went up there. * * *"

[Examination by the Court.]

"THE COURT: The Court understands the boy said come in; now, did you go in?

"THE WITNESS: I stepped—I put my foot in the doorway.

"THE COURT: All right. Now, at that time, where was Mrs. White?

"THE WITNESS: Mrs. White was to my left, about standing from here to Mr. Titus, and Roland White was directly in front of me.

"THE COURT: What did you say to Mrs. White?

"THE WITNESS: I told her that I was a police officer and I showed her my badge and I told her I had a search warrant for the premises.

"THE COURT: What, if anything, did Mrs. White say?

"THE WITNESS: At that time, I don't recall whether she said anything or not. I don't remember what she said.

"THE COURT: What, if anything, did you do?

"THE WITNESS: At this time, we came on in and I walked over to Mrs. White.

"THE COURT: All right. You may step down."