**UNITED STATES of America, Appellant,**

v.

**Maurice KEMP, Appellee.**

**No. 93–3044.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 8, 1993.

Decided Jan. 14, 1994.

Michael D. Brittin, Asst. U.S. Atty., Washington, DC, argued the cause for appellant. With him on the briefs were J. Ramsey Johnson, U.S. Atty. at the time the briefs were filed, John R. Fisher, Roy W. McLeese, III, and Cathleen M. Corken, Asst. U.S. Attys.

Mark J. Rochon, Washington, DC, argued the cause and filed the brief for appellee.

Before WALD, GINSBURG and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

Concurring opinion filed by Circuit Judge WALD.

GINSBURG, Circuit Judge:

The Government appeals a district court order granting the defendant's motion to suppress physical evidence on the ground that it was seized in violation of the federal knock and announce statute, 18 U.S.C. § 3109. We hold that the officer's entry into the premises to be searched when the door

opened under the force of his knock was not a "breaking" subject to the requirements of that law, and therefore we reverse the suppression order.

## I. BACKGROUND

A Metropolitan Police officer executing a search warrant opened the screen door and knocked on the wooden door of the premises to be searched. Apparently the inner door was not latched properly for it swung open when the officer knocked, although his knock was not unusually forceful. Through the open door the officer saw the defendant and two others sitting on a sofa in the living room, watching television. The officer announced his presence and purpose to execute a search warrant while standing at the threshold and then without further delay entered the apartment.

After securing the individuals in the living room, the officer and his colleagues searched the apartment, recovering a handgun, ammunition, drug paraphernalia, cocaine residue, and an electric scale. The defendant was charged with possession of a firearm by a convicted felon, in violation of federal law, and possession of an unregistered pistol and unregistered ammunition, in violation of District of Columbia law.

The defendant moved to suppress the evidence that had been seized in the search, alleging a violation of the federal knock and announce statute. It provides that an "officer may break open any outer or inner door or window of a house ... to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance...." 18 U.S.C. § 3109. As we have interpreted this statute, notice and refusal are preconditions of a lawful "breaking" by the police, absent exigent circumstances.

At the suppression hearing the police officer testified that he believed that the individuals in the house might be armed and that his and the other officers' lives were in danger. Relying upon *Keiningham v. United States*, 287 F.2d 126, 130 (D.C.Cir.1960), the district court held that, because he entered without permission, the officer's entry into the apartment was a "breaking" and a "tech-nical violation of the statute." The court then found that there was no such exigency as would excuse a departure from the requirements of the statute, and therefore granted the defendant's motion to suppress physical evidence. The Government appeals that ruling.

## II. ANALYSIS

The dispute before us is a narrow one. The Government argues, *inter alia*, that the officer's entry into the apartment through the open door was not a "breaking" subject to the knock and announce requirement of § 3109. The appellee, on the other hand, defends the ruling of the district court on the grounds that under the law of this circuit, "any entry made without permission" is a breaking, and in any event the officer here "entered through a door that he pushed open without being refused admittance." The latter point is without significance, for it is settled that the officer did no more than knock with ordinary force; that the door then opened was a mere fortuity. The former point requires some exploration, however.

It is indeed long established in this circuit that an officer's entry through a closed door is a "breaking" within the meaning of § 3109, regardless whether the door was locked. *See, e.g., United States v. Wylie*, 462 F.2d 1178, 1185 (D.C.Cir.1972) (peaceable entry through unlocked door is breaking). On the other hand, if the door was already open when the officer approached the dwelling, *White v. United States*, 346 F.2d 800, 802 (D.C.Cir.1965), or if an officer's knock further opened a door that was already standing ajar, *United States v. Thorne*, 997 F.2d 1504, 1513 (D.C.Cir.1993), there is no "breaking" within the meaning of the statute. What, then, if the officer's knock opens a door that was closed but not latched? Today we hold that in that circumstance, there is no "breaking" at least where (1) the officer used only the force ordinarily used to knock upon, not to knock down, a door; and (2) an occupant is made aware of the officer's presence and purpose before the officer enters the premises.

When an officer knocks at a door that is and remains closed, it is not immediately clear whether the occupants are about to open the door. Hence, we require that the officer wait at least ten seconds (absent some intervening exigency) before inferring that he is being refused admission and proceeding forcibly to break in. *United States v. Bonner*, 874 F.2d 822, 826 (D.C.Cir.1989). When an officer knocks on a closed door only to find himself looking at an occupant of the apartment through an open door, however, a different situation is presented. As soon as the officer makes his announcement, the occupant is aware of his presence and his purpose to execute a search warrant. Inasmuch as the occupant then has no right to refuse the officer admission, no interest served by the knock and announce statute would be furthered by requiring the officer to stand at the open doorway for at least ten seconds in order to determine whether the occupant means to admit him.

We say this having in mind three interests that are advanced by the knock and announce requirement of § 3109: (1) reducing the potential for a violent confrontation between the police and an occupant startled by an unannounced intrusion, *Miller v. United States*, 357 U.S. 301, 313 n. 12, 78 S.Ct. 1190, 1198 n. 12, 2 L.Ed.2d 1332 (1958); (2) preventing needless destruction of private property, *United States v. Bustamante–Gamez*, 488 F.2d 4, 9 (9th Cir.1973); and (3) showing respect for the individual's privacy interest in his home. *Miller*, 357 U.S. at 313, 78 S.Ct. at 1197. As for the first, when the police and the occupant of a dwelling face each other through an open doorway and the police announce their purpose before entering, any violence that might ensue between the occupant and the officers is not attributable to surprise and is not likely to be averted by the police standing around for ten or more seconds. *See, e.g., Bustamante–Gamez*, 488 F.2d at 11 ("To the extent that the rule prevents violence, its utility is exhausted when the actual announcement is made"). Nor is the second interest, preventing unnecessary destruction of property, implicated when the door is open and the officers can enter peaceably into the premises. Finally, while respect for the individual's privacy in his home—qualified by the imminent execution of a valid search warrant—is well served by requiring the officer to knock and announce his authority and purpose, such respect would only be mocked by requiring the officer to wait on the doorstep, staring at the occupant, for some length of time until the occupant could be understood constructively to have refused him the entry to which he is entitled.

In this case the district court held that the officer's action was nonetheless a "breaking" within the meaning of the statute only because it erroneously believed it was bound by an overbroad statement in *Keiningham:* "the word 'break,' as used in 18 U.S.C. § 3109, means 'enter without permission.'" 287 F.2d at 130. But that is not the law of this circuit, nor even the holding in *Keiningham* itself. In that case, officers opened an unlocked door leading from the premises for which they had a search warrant into the patio of the adjacent row house. The court held only that the officers entered the adjacent premises when they passed through the door to the patio and that they were required at that time to knock and announce their presence and purpose, which they had not done. *Id.*

Although we have thrice since cited *Keiningham* with approval, we have never relied upon the dictum equating every unauthorized entry with a "breaking." Rather, in one such case we held that a "breaking" occurred because the police opened a closed but unlocked door. *See Wylie*, 462 F.2d at 1185–86. In another, "the record [did] not disclose whether the door [of the defendant's house, into which he had fled as the police approached] ... was unlocked, closed but unlocked, or merely left ajar." *Hair v. United States*, 289 F.2d 894, 897 (D.C.Cir.1961). The court, per Judge Bazelon, nonetheless thought that there would be a breaking "even if we were to assume that the door was left open," quoting *Keiningham* for the proposition that "a person's right to privacy in his home ... is governed by something more than the fortuitous circumstance of an unlocked door...." *Id.* (quoting 287 F.2d at 130). As we have seen, that a door is unlocked continues to be irrelevant. *See Wylie*, 462 F.2d at 1185.

The assumption in the *Hair* opinion that an open door is as good as a closed one for purposes of § 3109 was necessarily repudiated, however, by the decision in *White*. Although neither the court nor the dissenter in that case cite *Hair*, the court clearly confined *Keiningham* to its actual holding. After recounting the facts of the earlier case, the court stated:

> Under such circumstances, a majority said, quite apart from its dictum: *"We hold that the officers 'entered' 1108 when they passed through the door in the partition* [separating the two houses] *and we decide these cases on the narrow ground that an announcement, at least, was required at that time."*

*White*, 346 F.2d at 803 (emphasis and parenthetical in original). *See also United States v. Harris*, 435 F.2d 74, 81–82 (D.C.Cir.1970) (holding entry without permission or refusal thereof justified by exigent circumstances although "entry without consent ordinarily amounts to a 'breaking' ").

Still, our holding today is a narrow one: When a police officer knocks (with only reasonable force) at the door of the premises for which he has a warrant, the door opens as a result, and he announces his presence and purpose to an occupant therein, the officer does not "break" the door open within the meaning of § 3109; hence his entry is not in violation of that statute. We have no occasion today to consider whether the same result would obtain if no occupant were aware of the policeman at the threshold, much less to adopt or to reject the broader proposition that entry through an open door is never a "breaking." *See United States v. Morell*, 524 F.2d 550, 556 (2nd Cir.1975) (compliance with § 3109 unnecessary where door is open); *United States v. Johns*, 466 F.2d 1364, 1365 (5th Cir.1972) (no "breaking" where officer entered after defendant saw officer and turned back into building leaving door open); *United States v. Lopez*, 475 F.2d 537, 540–41 (7th Cir.1973) (entry into hotel room as soon as door was opened not a "breaking"); *United States v. Valenzuela*, 596 F.2d 1361, 1365 (9th Cir.1979) (entry through open door not a "breaking"); *United States v. Remigio*, 767 F.2d 730, 732–33 (10th Cir.1985) ("entry through open door is not a 'breaking' within the meaning" of § 3109). *See also United States v. Williams*, 351 F.2d 475, 476–77 (6th Cir.1965) (entry into apartment through open door when occupant on phone and visible to officers does not render search unlawful). *But see United States v. Tolliver*, 665 F.2d 1005, 1007–08 (11th Cir. 1982) (entry into apartment by pushing against door after occupant cracked it open is "breaking").

### III. CONCLUSION

For the foregoing reasons, we reverse the order of the district court suppressing the physical evidence seized during the search of the apartment. This matter is remanded to the district court for further proceedings.

*So ordered.*

WALD, Circuit Judge, concurring:

I concur in the majority's holding in this case, *i.e.*, that the officer did not "break open" the door when after knocking on it the door fortuitously swung open and that the purposes of § 3109 were satisfied when the officer then announced his presence and purpose in full view of an occupant therein. To require the officer in such a situation to stare at the occupants for over ten seconds before moving inside would truly demand a "useless gesture." *Miller v. United States*, 357 U.S. 301, 310, 78 S.Ct. 1190, 1196, 2 L.Ed.2d 1332 (1958). *See also Hair v. United States*, 289 F.2d 894, 897 (D.C.Cir.1961), *United States v. Wylie*, 462 F.2d 1178, 1186–87 (D.C.Cir.1972).

I wish briefly, however, to clarify my understanding of the history and status of *Keiningham v. United States*, 287 F.2d 126 (1960), in which it was stated that "the word 'break,' as used in 18 U.S.C. § 3109, means 'enter without permission.' " *Id.* at 130. As the majority notes, in *Hair* we did more than merely cite *Keiningham* with approval; we said that there was an impermissible breaking "even if we were to assume that the door was left open." 289 F.2d at 897. I do not find anything in later cases cited by the majority to "repudiate" that proposition. Our subsequent opinion in *White v. United States*, 346 F.2d 800 (D.C.Cir.1965), *cert. de-*

*nied,* 382 U.S. 1014, 86 S.Ct. 625, 15 L.Ed.2d 529 (1966), involved a case in which

> [t]he officer was not inside the apartment. The door was open. He saw [an occupant], showed her his badge and told her he had a search warrant for the premises. At that moment ... the officer stood, he did not enter the apartment except for placing his foot on the threshold.

346 F.2d at 804 (footnote omitted). The court declined "to hold as a matter of law that an officer, merely standing as described—by that very act—while announcing his identity and purpose, had unlawfully broken into [the] apartment." *Id.* at 802. In other words, I read the *White* court as ruling that, without a passing through as occurred in *Keiningham,* there was no "breaking." Indeed, five years later the court in *United States v. Harris,* 435 F.2d 74 (D.C.Cir.1970), *cert. denied,* 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 152 (1971), again relying on *Keiningham,* held that a peaceful entry into an apartment "was nonetheless without consent and therefore constituted a 'breaking' under the statute," 435 F.2d at 82 n. 13, although the court ultimately found that the officers' safety concerns permitted application of the "exigent circumstances exception to § 3109," *id.* at 83 (citations omitted).

Since, as the majority recognizes, we are not faced with the situation where the occupant is not aware of the policeman at the threshold of an open door, we need not speak to the general proposition of whether entry through an open door without permission can ever constitute a "breaking." But should such a case arise, I wish my reading of the relevant precedent on this point to be on record.