**Frances D. BELTON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 91–CF–1327.**

District of Columbia Court of Appeals.

Submitted May 26, 1993.
Decided Sept. 8, 1994.

David W. Windley, Washington, DC, appointed by this court, was on the brief, for appellant.

Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher, Thomas C. Black, Andrew S. Levetown, and Steven J. Durham, Asst. U.S. Attys., were on the brief, for appellee.

---

Before WAGNER, Chief Judge,* TERRY, Associate Judge, and REILLY, Senior Judge.

TERRY, Associate Judge:

Appellant was convicted of possession of cocaine with intent to distribute it, in violation of D.C.Code § 33–541(a)(1) (1993). On appeal she maintains that the trial court erred in (1) failing to suppress certain physical evidence seized during the execution of a search warrant, on the ground that the police violated the "knock and announce" statute, D.C.Code § 33–565(g) (1993); (2) failing to suppress evidence seized from her daughter, assertedly in violation of the Fourth Amendment; (3) failing to suppress her own statement that she lived in the apartment where the search took place, which she contends was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and (4) limiting cross-examination of a police officer about the contents of the affidavit in support of the search warrant. We reject all of these contentions and affirm the conviction.

## I

Several police officers executed a search warrant at appellant's second-floor apartment at approximately 7:15 p.m. on January 18, 1990. When they arrived, they found the front door to the apartment partially open. Looking through the open doorway, the officers saw appellant seated in a chair in the living room next to the window. Officer Francis Jenkins testified that, while he and his companions stood in the hallway outside the apartment, appellant was looking at him and appeared to be aware of his presence. He knocked on the open door and announced that he was a police officer and that he had a search warrant, but appellant said nothing in reply. Jenkins and his fellow officers then walked through the open door into the apartment. Appellant and her two grown daughters were inside, along with several small children. While the police were conducting their search, one of the officers asked appellant whose apartment it was; appellant replied that it was hers. The search yielded a substantial quantity of crack cocaine,[1] drug paraphernalia, cash, and personal papers bearing appellant's name.

## II

The District of Columbia's knock and announce statute provides that, in the course of executing a search warrant for controlled substances or related items, a police officer "may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance." D.C.Code § 33–565(g) (1993); *see generally Griffin v. United States*, 618 A.2d 114, 119–125 (D.C.1992); *Williams v. United States*, 576 A.2d 700, 703–704 (D.C.1990). We have recognized that this statute "codif[ies] the common law rule that the police may not forcibly enter a person's house without prior announcement." *Id.* at 703 (citation omitted); *accord, e.g., United States v. Patrick*, 294 U.S.App.D.C. 393, 400–401, 959 F.2d 991, 998–999 (1992).[2] The statute "serves the important purposes of protecting the individual's right of privacy in his or her home, and of protecting police officers against unwarranted danger and encouraging police safety." *Williams, supra,* 576 A.2d at 703 (citations omitted). Accordingly, we have construed the statute to allow the police to enter forcibly when they "can reasonably infer from the actions or inactions of the occupants that they have been constructively refused admittance" or "are confronted with 'exigent' circumstances, such as the imminent destruction of evidence, or some danger to the entering officers." *Id.*

---

* Judge Wagner was an Associate Judge of the court at the time this case was submitted. Her status changed to Chief Judge on June 14, 1994.

1. All told, 139 ziplock bags were found and seized by the police in the course of their search. Expert testimony established that these bags contained a total of 51 grams of crack cocaine with a street value of approximately $10,000.

2. The *Patrick* case involved the corresponding federal statute, 18 U.S.C. § 3109 (1988). Because the language of the local statute is almost identical to that of its federal counterpart, this court accords "respectful consideration to authorities interpreting § 3109." *Griffin, supra,* 618 A.2d at 119.

(citations omitted); *accord, e.g., Culp v. United States,* 624 A.2d 460, 462 (D.C.1993).

■ Appellant, relying primarily on *Keiningham v. United States,* 109 U.S.App.D.C. 272, 287 F.2d 126 (1960), maintains that the police entry into her apartment violated the requirements of section 33–565(g) because, after knocking and announcing their authority and purpose at her open door, Officer Jenkins and his colleagues did not wait for any response before they entered. But *Keiningham* does not support appellant's argument.

In *Keiningham* the police went to a row house at 1106 18th Street, N.W., to execute arrest and search warrants. The persons named in the arrest warrants had been seen entering that house, but a search of the house for them was unsuccessful. During the search, the police discovered a newly constructed door connecting the second floor rear porch of 1106 18th Street with the second floor rear porch of 1108 18th Street, the house next door. Without knocking or announcing, the officers went through that door, which was unlocked, and then looked through a glass pane in another door leading into the house at 1108. Seeing the men they were looking for, the officers proceeded through this door, again without knocking or announcing their purpose. They arrested the men and seized various gambling paraphernalia which they found inside the house. Reversing the ensuing conviction for violating the gambling laws, the court ruled that the seized items should have been suppressed. On its way to that ruling, the court said:

> We think that a person's right to privacy in his home (and the limitation of authority to a searching police officer) is governed by something more than the fortuitous circumstance of an unlocked door, and that *the word "break," as used in 18 U.S.C. § 3109, means "enter without permission."*

*Id.* at 276, 287 F.2d at 130 (emphasis added). The italicized language, though often cited by defendants seeking suppression, is plainly dictum, as the same court acknowledged very recently in *United States v. Kemp,* 304 U.S.App.D.C. 275, 277, 12 F.3d 1140, 1142 (1994). The actual holding of *Keiningham* was far less sweeping. The court said: "We hold that the officers 'entered' 1108 when they passed through the [porch] door ... and we decide [this case] on the narrow ground that an announcement, at least, was required *at that time.* " 109 U.S.App.D.C. at 276, 287 F.2d at 130 (emphasis added); *see United States v. Kemp, supra,* 304 U.S.App. D.C. at 277, 12 F.3d at 1142.

The *Kemp* case is particularly instructive because it makes absolutely clear that District of Columbia law [3] does not regard every non-permissive police entry as a "breaking." The court in *Kemp* characterized the language we have italicized in our quotation from *Keiningham* as "an overbroad statement" which is "not the law of [the District of Columbia] circuit, nor even the holding in *Keiningham* itself.... Although we have thrice cited *Keiningham* with approval, we have never relied upon the dictum equating every unauthorized entry with a 'breaking.' " *Id.* The court went on to distinguish *Hair v. United States,* 110 U.S.App.D.C. 153, 289 F.2d 894 (1961), a case on which appellant also places great reliance. The record in *Hair* did not disclose whether the door of the house which the police entered was locked, closed but unlocked, or merely ajar. Nevertheless, the court "thought that there would be a breaking 'even if we were to assume that the door was left open,' quoting *Keiningham* for the proposition that 'a person's right to privacy in his home ... is governed by something more than the fortuitous circumstance of an unlocked door....' " *Kemp,* 304 U.S.App.D.C. at 277, 12 F.3d at 1142, citing *Hair,* 110 U.S.App.D.C. at 156, 289 F.2d at 897. The court in *Kemp* observed that "[t]he assumption in the *Hair* opinion that an open door is as good as a closed one for purposes of [the knock and announce statute] was necessarily repudiated ... by the decision in *White* [*v. United States,* 120 U.S.App.D.C. 319, 346 F.2d 800 (1965), *cert. denied,* 382 U.S. 1014, 86 S.Ct.

---

3. See note 6, *infra.*

625, 15 L.Ed.2d 529 (1966).]"[4] *Kemp*, 304 U.S.App.D.C. at 278, 12 F.3d at 1143.

The facts in *Kemp* are very similar to the facts in the case at bar. In *Kemp* a police officer with a search warrant went to the defendant's apartment and knocked on the door, which swung open when he knocked. "Through the open door the officer saw the defendant and two others sitting on a sofa in the living room, watching television. The officer announced his presence and purpose to execute a search warrant while standing at the threshold and then without further delay entered the apartment." *Id.* at 276, 12 F.3d at 1141. On these facts the court found no "breaking" within the meaning of 18 U.S.C. § 3109[5] and reversed a trial court order suppressing evidence seized in the apartment by the police. *Id.* at 278, 12 F.3d at 1143. One judge, in a concurring opinion, read *Keiningham* and later cases more narrowly, but concluded nevertheless that there was no breaking in *Kemp* because the officer had

knocked and announced his purpose in full view of the defendant, who was in fact aware of the officer's presence as he stood in the hallway just outside the open door—exactly what happened in this case. *See id.* at 278–279, 12 F.3d at 1143–1144 (Wald, J., concurring).

■ Reading *Keiningham, Hair,* and *White* together, with the illumination provided by *Kemp,*[6] we adopt the reasoning of *Kemp* and hold that an entry through an open door by a police officer with a search warrant, after the occupant is made aware of the officer's presence and purpose, is not a "breaking" within the meaning of the knock and announce statute.[7] Like the court in *Kemp*, we reject the notion that "an open door is as good as a closed one"[8] for the purposes of that statute. It follows that there was no breaking in this case, and that the trial court did not err in denying appellant's motion to suppress the evidence seized in her apartment.[9]

**4.** In *White, supra*, police officers with a search warrant went to the defendant's apartment in the middle of the afternoon. The door was partly open, and an eight-year-old boy was coming out of the apartment. An officer asked the boy if Mr. or Mrs. White was at home; the boy said yes and opened the door wider. The officer then saw Mrs. White, showed her his badge, and said he had a search warrant, all the while standing in the doorway with his foot on the threshold. Mrs. White apparently said nothing (or at least the officer could not remember what she might have said), and the officer and his partner entered the apartment and conducted their search. The court held that there was no breaking, in violation of 18 U.S.C. § 3109, and that "every reason for the exclusionary rule ... was fully satisfied." 120 U.S.App.D.C. at 323, 346 F.2d at 804. The court distinguished *Keiningham* on its facts, noting in particular that the officers in *Keiningham* did not have a search warrant for the second house that they entered through the door at the rear of the first house, and characterized as "dictum" the language we have italicized in our quotation above from *Keiningham*. *Id.* at 322, 346 F.2d at 803.

**5.** See note 2, *supra*.

**6.** *Keiningham, Hair,* and *White* are binding on us under *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971). *Kemp* is not, but the opinion in *Kemp* is extremely helpful in understanding just how much of *Keiningham* has precedential force and how much does not. *Hair* in turn is dependent on *Keiningham* and, as *Kemp* tells us, makes an

assumption about open doors which *White* later demonstrates to be wrong.

**7.** This holding is consistent with what appears to be the general rule in the federal courts: that "entry through an open door is not a 'breaking' within the meaning of the federal knock and announce statute, 18 U.S.C. § 3109." *United States v. Remigio*, 767 F.2d 730, 732 (10th Cir.), *cert. denied*, 474 U.S. 1009, 106 S.Ct. 535, 88 L.Ed.2d 465 (1985); *accord, e.g., United States v. Bethea*, 598 F.2d 331, 334 (4th Cir.), *cert. denied*, 444 U.S. 860, 100 S.Ct. 124, 62 L.Ed.2d 81 (1979); *United States v. Lopez*, 475 F.2d 537, 541 (7th Cir.), *cert. denied*, 414 U.S. 839, 94 S.Ct. 89, 38 L.Ed.2d 74 (1973); *United States v. Johns*, 466 F.2d 1364, 1365 (5th Cir.1972); *United States v. Conti*, 361 F.2d 153, 157 (2d Cir.1966), *vacated on other grounds*, 390 U.S. 204, 88 S.Ct. 899, 19 L.Ed.2d 1035 (1968); *Ng Pui Yu v. United States*, ·352 F.2d 626, 632 (9th Cir.1965); *United States v. Williams*, 351 F.2d 475, 477 (6th Cir.1965), *cert. denied*, 383 U.S. 917, 86 S.Ct. 910, 15 L.Ed.2d 671 (1966). The only contrary decision cited by the court in *Remigio* is *Hair v. United States, supra*, but given the recent holding in *Kemp*, the precedential value of *Hair* is questionable at best.

**8.** *Kemp, supra;* 304 U.S.App.D.C. at 278, 12 F.3d at 1143.

**9.** Given our holding that there was no breaking, we need not consider the government's alternative arguments that appellant consented to the police entry and that the entry was "peaceable."

## III

Appellant's remaining contentions are without merit.

■ (a) Appellant challenges the seizure of narcotics found in the possession of her daughter. The short answer to this argument is that appellant cannot assert her daughter's Fourth Amendment rights. *Rakas v. Illinois,* 439 U.S. 128, 134, 99 S.Ct. 421, 426, 58 L.Ed.2d 387 (1978); *Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 966–67, 22 L.Ed.2d 176 (1969).[10]

■ (b) While the police were searching the apartment, an officer asked appellant who lived there, and appellant replied that she did. Appellant's claim that this question violated her *Miranda* rights, requiring her answer to be suppressed, must fail in light of such cases as *Reid v. United States,* 581 A.2d 359, 364 (D.C.1990); *McIlwain v. United States,* 568 A.2d 470, 472 (D.C.1989); *Hairston v. United States,* 500 A.2d 994, 997 (D.C.1985); and *Hammill v. United States,* 498 A.2d 551, 559 (D.C.1985). *See also Michigan v. Summers,* 452 U.S. 692, 705, 101 S.Ct. 2587, 2595–96, 69 L.Ed.2d 340 (1981).

■ (c) Finally, we hold that the trial court properly restricted defense counsel's cross-examination of Officer Jenkins concerning certain information in the affidavit supporting the search warrant. The evidence that counsel sought to elicit involved the observations of a police informant about what he had seen on the premises several days before the officers executed the warrant. We agree with the government that this evidence was irrelevant, *see Jamison v. United States,* 600 A.2d 65, 69–70 (D.C.1991); *United States v. Sutton,* 255 U.S.App.D.C. 307, 324, 801 F.2d 1346, 1363 (1986), and that the informant's statements were also excludable as hearsay. *See Harley v. United States,* 471 A.2d 1013, 1014 (D.C.1984). The case of *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), on which appellant relies, is distinguishable because in this case, unlike *Washington,* defense counsel

never sought to compel the informant's testimony. Here the trial court never forbade counsel from calling whatever witnesses he wanted, but merely limited his cross-examination to relevant subjects.

## IV

For the foregoing reasons, appellant's conviction is

*Affirmed.*

**10.** In any event, the search of the daughter was permissible under D.C.Code § 23–524(g) (1989), which authorizes an officer executing a search warrant to search "any person" on the premises "to the extent reasonably necessary to find property enumerated in the warrant which may be concealed upon the person."