Notice: This opinion is subject to formal revision before publication in the
Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify
the Clerk of any formal errors in order that corrections may be made
before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 4, 2004          Decided November 5, 2004

No. 04-3026

UNITED STATES OF AMERICA,
APPELLANT

v.

EDWARD N. HOLMES,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 03cr00508–01)

*John P. Gidez*, Assistant U.S. Attorney, argued the cause
for appellant. With him on the briefs were *Kenneth L.
Wainstein*, U.S. Attorney, and *John R. Fisher* and *Elizabeth
Trosman*, Assistant U.S. Attorneys. *Mary M. Petras*, Assistant U.S. Attorney, entered an appearance.

Bills of costs must be filed within 14 days after entry of judgment.
The court looks with disfavor upon motions to file bills of costs out
of time.

*Lisa B. Wright*, Assistant Federal Public Defender, argued the cause for appellee. With her on the brief was *A.J. Kramer*, Federal Public Defender.

Before: ROGERS, TATEL, and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: The government appeals the district court's suppression of evidence the police discovered during a search that, according to the district court, ran afoul of the federal knock and announce statute. The district court, however, failed to make a finding on a critical issue, i.e., whether the police announced "warrant" before entering the premises, leaving us unable to perform our appellate function. Accordingly, we vacate the district court's order and remand for further proceedings consistent with this opinion.

## I.

The knock and announce statute, 18 U.S.C. § 3109, provides that an "officer may break open any outer or inner door or window of a house . . . to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance. . . ." "Codifying a tradition embedded in Anglo–American law," section 3109 declares the "reverence of the law for the individual's right of privacy in his house." *Miller v. United States*, 357 U.S. 301, 313 (1958). The principles underlying the statute also form part of the Fourth Amendment's reasonableness inquiry, as the reasonableness of a search of a dwelling may vary depending on whether the police announced their presence and authority. *Wilson v. Arkansas*, 514 U.S. 927, 930, 936 (1995).

In this case, D.C. Metropolitan Police Officer Anthony Guice, based on his affidavit that a "special employee" had purchased drugs from "Eddie" at 800 Southern Avenue, S.E., Apartment 1214, obtained a search warrant for the premises. To execute the warrant, Guice and several other officers waited in a stairwell one floor below the apartment until undercover officers stationed in the twelfth floor hallway signaled that the "target" had just left Apartment 1214 and was standing in the hallway at the apartment's front door.

Led by Officer Andre Martin, the officers, wearing police jackets and vests and with badges hanging around their necks, rushed up the stairs to the apartment door, where they found appellee Edward Holmes holding a set of keys.

According to Martin, he twice said to Holmes, "[P]olice, search warrant," but—significantly for this appeal—the district court never expressly made this finding. Taking the keys from Holmes's hand, Martin unlocked the door and together with several other officers entered and seized a rifle, several rounds of ammunition, and a bag of heroin. No one was inside the apartment. The officers arrested Holmes, and a grand jury later indicted him on one count of unlawful possession of a firearm and ammunition by a convicted felon, *see* 18 U.S.C. § 922(g)(1), one count of unlawful possession of ammunition by a convicted felon, *see id.*, and one count of heroin possession, *see* 21 U.S.C. § 844(a).

Before trial, Holmes moved to suppress the evidence seized in the apartment, arguing that the police had violated section 3109. At the evidentiary hearing, the government called Officer Guice, who testified that he reached the apartment door "two to three seconds" after the first wave of officers, and that he heard no exchanges between the officers and Holmes. Asked whether the officers had knocked, Guice answered no, explaining, "Since we had the keys, I didn't feel we needed to knock on the door." Defense counsel argued that this testimony demonstrated a violation of section 3109 because the officers "did not knock, did not announce, did not say warrant, did not say anything to Mr. Holmes before opening the door with the keys."

The day after Guice testified, the prosecutor received permission to reopen the hearing to call Officer Martin. Martin testified that as he approached the door carrying a battering ram, he said to Holmes, "Police, search warrant," loudly enough that anyone in the hallway would have heard. According to Martin, Holmes asked what was going on, at which point Martin took the keys from Holmes's hand and said, "This is a search warrant." Martin also testified that he had an exchange with Holmes during which Martin asked Holmes

which key opened the door, but the district court struck this conversation as violating Federal Rule of Criminal Procedure 16, which requires the prosecution to turn over to defense counsel evidence of any statements by the defendant.

The government argued that if, during the execution of a warrant, the defendant (1) has notice of the officers' authority and purpose and (2) is standing outside the door of his dwelling, a formal knock and announce would be superfluous. Relying on a Fourth Circuit decision, the government urged the district court to find the officers' actions reasonable under the circumstances. *See United States v. Dunnock*, 295 F.3d 431, 435 (4th Cir.) (holding that knock and announce would have been futile when defendant received "functional equivalent of notice of authority and purpose" after police arrested and questioned him about whether he had a key to the door and whether anyone was inside), *cert. denied*, 537 U.S. 1037 (2002).

In its findings of fact, the district court restated Martin's testimony, but made no finding as to whether Martin actually announced "warrant" before taking Holmes's keys and unlocking the door. The court noted only that "there was a conversation of some kind between Officer Martin and the defendant," presumably alluding to the discussion about which key opened the door and possibly to Holmes's asking what was going on. Tr. 2/20/04 at 69. The district court also found that the officers "knew nothing about whether there was anyone else in the apartment, who the apartment was rented to, who actually lived in the apartment, and did not know for sure that the gentleman they stopped outside the apartment, namely Mr. Holmes, was the 'Eddie' referred to in the search warrant." Tr. 2/20/04 at 76. Concluding that the police had failed to comply with section 3109, and rejecting the government's functional equivalence argument, the district court granted the motion to suppress the gun, the ammunition, and the drugs.

## II.

Reiterating its position in the district court, the government argues that the officers fulfilled the purposes of the

knock and announce statute despite their undisputed failure to formally knock—the traditional means of providing notice of police authority before entering a home—or to give Holmes an opportunity to consent to or refuse their entry. Specifically, the government asserts that Martin, by twice identifying himself and informing Holmes of the warrant, provided the functional equivalent of notice of authority and purpose, rendering irrelevant from Holmes's perspective not only the officers' failure to knock, but also their ignorance as to whether anyone was inside the apartment. Technical compliance with section 3109, the government argues, is unnecessary when the search implicates none of the three core values protected by the statute: "(1) reducing the potential for a violent confrontation between the police and an occupant startled by an unannounced intrusion; (2) preventing needless destruction of private property; and (3) showing respect for the individual's privacy interest in his home." *United States v. Kemp*, 12 F.3d 1140, 1142 (D.C. Cir. 1994). According to the government, violence in this case was unlikely because Martin announced they were police officers with a warrant, and no one was inside the apartment; no destruction of private property occurred because the officers used Holmes's key to gain entry; and Holmes had only a minimal privacy interest in the apartment because he was not in the apartment and knew from Martin's statement that a warrant-authorized search was imminent.

Significantly for our purposes, the government never argues that functional compliance with section 3109 could have been achieved had Martin failed to provide notice by saying "warrant." In other words, as the government explained at oral argument, its theory that no section 3109 violation occurred assumes that Martin in fact said "warrant." The district court's failure to make a finding on this critical issue, the government insists, presents no problem: since the court never discredited Martin's testimony, we should assume it believed that Martin actually said "warrant." For several reasons, we cannot make such an assumption.

To begin with, the district court's findings are quite comprehensive, leaving us hesitant to assume that the court made

a finding it never mentioned. Reviewing those findings, moreover, we cannot tell precisely what the district court thought about Martin's testimony. The court stated, "Ultimately [Martin] took the keys from the defendant. There was a conversation of some kind between Officer Martin and the defendant. However, . . . the Court suppressed those statements . . . because there had been a violation of rule 16." Tr. 2/20/04 at 69. The district court also stated that Martin testified

> he did not knock because he had the keys, . . . he never asked the defendant for permission to enter the apartment, and that was because the officer knew that there was a search warrant. Officer Martin also testified that he never asked whether anyone was inside the apartment, and that he had absolutely . . . no knowledge of whether anyone else was in the apartment.

*Id.* From these passages, we have no idea whether the district court believed Martin announced "warrant," but failed to mention it, or whether the court discredited that statement—either because it conflicted with Guice's testimony that he never heard Martin say anything at all, or because the district court simply found Martin not credible on that issue. Moreover, when describing Martin's testimony that he was the first to see Holmes standing in front of his apartment, the district court stated that "the Court does credit Officer Martin's testimony *on this*." *Id.* at 68 (emphasis added). But the court neither explained what it thought about the other aspects of Martin's testimony discussed in its findings nor even mentioned the warrant statement.

The district court's conclusions likewise reveal little about whether the court credited Martin's warrant testimony. "[I]t is undisputed," the district court said, "that the police did not *knock and announce*, and certainly did not follow the requirements of the Federal statute." *Id.* at 75 (emphasis added). As Holmes points out, this could be read to suggest that the court discredited Martin, for why else would it have found that the police failed to "knock and announce"? On the other hand, as the government suggested at oral argument, perhaps

the district court used the phrase "knock and announce" to indicate the officers would have violated the statute unless they knocked *and* announced. Viewed this way, the district court's statement could mean that the court credited Martin's announcement of "police, search warrant," but found the absence of a formal knock to have violated section 3109. Although the government's interpretation is plausible, we think it unwise to resolve an issue so critical to Holmes's claim on the basis of an assumption about what the district court may have meant by the phrase "knock and announce."

The government offers a second reason for assuming that the district court credited Martin's testimony: according to the government, Martin's testimony does not actually conflict with Guice's. Emphasizing Guice's testimony that "Martin and [another officer] got to [Holmes] prior to me getting to him, and if they asked him anything, it was not to my knowledge," the government theorizes that Martin could have said "warrant" to Holmes before Guice's arrival. This theory finds support in the district court's statement that "[t]here was a conversation of some kind between Officer Martin and the defendant." On the other hand, other testimony in the record could be viewed as contradicting the government's theory. Martin testified that the other officers arrived at the apartment door essentially at the same time and not more than a second after he did. He also said he had announced warrant loudly enough that the "other officers should have heard."

For his part, Holmes urges us to construe the record in the light most favorable to upholding the district court's ruling—that is, to assume that the district court discredited Martin and believed that the officers neither knocked nor announced. Although this circuit has stated that "we must uphold the ruling of the trial court if there is any reasonable view of the evidence that will support it," *Scarbeck v. United States*, 317 F.2d 546, 562 (D.C. Cir. 1962), we held in *United States v. Williams*, 951 F.2d 1287, 1289 (D.C. Cir. 1991), that we will not do so where we "do not know which facts the district court considered 'essential' to its ruling," *see also United States v. Jordan*, 951 F.2d 1278, 1283 (D.C. Cir. 1991) (re-

manding appeal from a suppression motion denial for a finding on a "key factor" for determining whether a seizure occurred). We think this is such a case. Because we cannot tell whether the district court believed that Martin said "warrant," we find ourselves in the unusual situation of being unable to deduce what, if any, role this crucial testimony played in the district court's disposition of this case. *See United States v. Johnson*, 212 F.3d 1313, 1316 (D.C. Cir. 2000) (noting necessity of remand where there is "genuine uncertainty about what the district court did"). As the government states in its reply brief, in such circumstances a remand to resolve the ambiguity is warranted. *See United States v. Goree*, 365 F.3d 1086, 1094-95 (D.C. Cir. 2004).

## III.

In sum, the district court's failure to resolve the key question of Martin's credibility makes it impossible for us to perform our appellate function. "The purpose of an appeal is to review the judgment of the district court, a function we cannot properly perform when we are left to guess at what it is we are reviewing." *Williams*, 951 F.2d at 1290. We therefore vacate the district court's order and remand for further proceedings consistent with this opinion.

*So ordered.*