2005 UT App 320

STATE of Utah, Plaintiff and Appellee,

v.

Pete FLOOR, Defendant and Appellant.

No. 20040779–CA.

Court of Appeals of Utah.

July 14, 2005.

---

Debra M. Nelson, Ralph Dellapiana and Kent R. Hart, Salt Lake City, for Appellant.

Mark L. Shurtleff and Jeffrey S. Grey, Salt Lake City, for Appellee.

Before Judges BILLINGS, BENCH, and WILKINS.[1]

## OPINION

WILKINS, Associate Chief Justice:

¶ 1 Defendant Pete Floor challenges the district court's rejection of his motion to suppress evidence seized from Floor's residence during the execution of a "knock-and-announce" search warrant. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Detectives Doug Teerlink and Steve Cutler of the Salt Lake City Police Department Narcotics Squad approached the front door of Floor's residence in order to execute a "knock-and-announce" search warrant for drugs and drug related materials. The remainder of the team consisting of eight or nine uniformed SWAT team members waited secretly in the driveway. When Detectives Teerlink and Cutler reached the front door, they observed that it was already open and saw a female occupant of the residence standing just inside the door. Upon seeing them, the female resident, Connie Barnett, opened the screen door and initiated a conversation with the two detectives, thinking that the two had come in reference to her lost dog. The detectives were dressed in plain clothes, and they could see Floor and another occupant in the front room.

¶ 3 After a brief conversation, Detective Cutler showed his police badge as Detective Teerlink announced, "Salt Lake City Police, serving a search warrant." Barnett responded by attempting to retreat into the residence, after which Detective Teerlink seized her arm to prevent her escape. Floor, who had positioned himself behind Barnett, grabbed her around the waist with both arms and pulled her and Detective Teerlink, who had taken hold of Barnett's arm, into the residence. Detective Cutler made an unsuc-

---

1. The Honorable Michael J. Wilkins, Associate Chief Justice of the Utah Supreme Court, sat by special assignment pursuant to Utah Code section 78–7–9.5. Utah R. Jud. Admin. 3–108(3).

cessful attempt to seize his partner to prevent him from being pulled into the residence. Barnett's attempt to flee and Floor's attempt to pull her into the residence led Detectives Teerlink and Cutler to believe that the occupants of the residence would resist any attempt of peaceable entry by the law enforcement agents. The detectives were concerned that if the occupants were allowed to fully retreat to unseen areas of the residence that the occupants could destroy the evidence of drugs being sought pursuant to the warrant or they could retrieve weapons and endanger the safety of the officers.

¶ 4 When Detective Burbank, the SWAT team leader, heard Detective Teerlink announce "Police, serving a search warrant," he moved the SWAT team into position by the front door. After shouting "police" several times, Burbank and the SWAT team entered the residence to subdue the occupants and execute the warrant. As a result of the search, the detectives found 0.6 grams of cocaine, drug paraphernalia, firearms, and a photograph of each of the occupants holding firearms. Floor was subsequently charged with unlawful possession of a controlled substance, possession of a firearm by a restricted person, and endangerment of a child.

¶ 5 Floor waived his right to a preliminary hearing and filed a motion to suppress the evidence found in his home, arguing that the evidence was obtained during an unlawful search. Floor argued that the search was unlawful because the detectives failed to knock and announce their presence and then wait a reasonable time prior to entering the house. The district court denied the motion, finding that it would have been irresponsible for the SWAT team to remain outside the door when they could see a fellow officer involved in a physical struggle inside the door. The district court further concluded that, based on the actions of Barnett and Floor, the detectives were not required by either the Fourth Amendment or Utah's "knock-and-announce" statute to wait any longer outside the residence.

¶ 6 Floor entered a conditional guilty plea to a reduced charge of unlawful possession of a controlled substance and possession of a firearm by a restricted person, both third degree felonies. He also reserved the right to appeal the trial court's denial of his motion to suppress. Floor filed a timely notice of appeal.

## STANDARD OF REVIEW

¶ 7 We review the factual findings underlying the district court's decision to grant or deny a motion to suppress evidence under a clearly erroneous standard. *State v. Krukowski*, 2004 UT 94, ¶ 11, 100 P.3d 1222. We further review the trial court's conclusions of law for correctness with some discretion given to the application of the legal standards to the underlying factual findings. *State v. Brake*, 2004 UT 95, ¶ 12, 103 P.3d 699.

## ANALYSIS

¶ 8 The issue before us is whether the trial court appropriately denied Floor's motion to suppress evidence obtained during the execution of a "knock-and-announce" search warrant, despite Floor's claim that the officers violated his Fourth Amendment rights by failing to wait a reasonable time before entry.

¶ 9 The so-called "knock-and-announce" rule is not a new one, but is rooted in an old common law tradition. In *Semayne's Case*, the King's Bench held:

> [T]he house of everyone is to him as his castle ....
>
> ....
>
> .... [But][i]n all cases when the King is a party, the sheriff (if the doors be not open) may break [into] the party's house, either to arrest him, or to do other execution of the King's process, if otherwise he cannot enter. But before he breaks [into] it, he ought signify the cause of his coming and to make request to open the doors.
>
> ... [F]or the law without a default in the owner abhors the destruction or breaking [into] of any house (which is for the habitation and safety of man) by which great damage and inconvenience might ensue to the party when no default is in him; for perhaps he did not know of the process of

which, if he had notice, it is to be presumed that he would obey it.

77 Eng.Rep. 194, 195–96 (K.B.1604); *see Wilson v. Arkansas,* 514 U.S. 927, 931–32, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995).

¶ 10 In Utah, the "knock-and-announce" rule is incorporated into Utah Code section 77–23–210, which reads:

When a search warrant has been issued authorizing entry into any building, room, conveyance, compartment, or other enclosure, the officer executing the warrant may use such force as is reasonably necessary to enter:

(1) if, *after notice of his authority and purpose,* there is no response or he is not admitted with reasonable promptness; or

(2) without notice of his authority and purpose, if the magistrate issuing the warrant directs in the warrant that the officer need not give notice. The magistrate shall so direct only upon proof, under oath, that the object of the search may be quickly destroyed, disposed of, or secreted, or that physical harm may result to any person if notice were given.

Utah Code Ann. § 77–23–210 (2003) (emphasis added).

¶ 11 Though often referred to as the "knock-and-announce" statute, the statute obviously does not require that a law enforcement official actually knock to comply fully with the requirements of the statute, but only that the officer give notice of his authority and purpose. *See id.* § 77–23–210(1).

¶ 12 Three basic interests are served through adherence to the "knock-and-announce" rule: "(1) the protection of an individual's private activities within his home, (2) the prevention of violence and physical injury to both police and occupants which may result from an unannounced police entry, and (3) the prevention of property damage resulting from forced entry." *State v. Buck,* 756 P.2d 700, 701 (Utah 1988). Though the reasonable waiting period is designed as a check upon police action and a protection to the rights of citizens, "a determination of 'reasonable promptness' under the statute must be made under all the circumstances, which

obviously vary from search to search." *State v. Thurman,* 846 P.2d 1256, 1261 (Utah 1993). We now focus our attention on whether or not the circumstances of this case comport with the "reasonable promptness" limitation of the statute.

¶ 13 Floor argues that the police officers failed to wait a reasonable time before entry. He argues that the police should not have been able to enter the home immediately, as they did, absent a showing of exigent circumstances. While a showing of exigent circumstances may not be required for immediate entry in every instance, such a showing will permit immediate entry. The Utah Supreme Court has held that exigent circumstances are " 'those that would cause a reasonable person to believe that [immediate] entry ... was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.' " *Brigham City v. Stuart,* 2005 UT 13,¶ 18 (quoting *State v. Beavers,* 859 P.2d 9, 18 (Utah Ct.App.1993) (internal quotation omitted)). When Barnett moved backward after the police officers announced their authority and purpose, a reasonable person could have interpreted that action as an attempt to flee. Certainly a reasonable police officer could have entered the house when Floor grabbed Barnett around the waist and began pulling her inside the dwelling. Under these circumstances, we conclude entry by the police officers was reasonable, and did not violate the statute or constitutional prohibitions.

¶ 14 Floor argues further that the officer's entry was unreasonable because the manner of entry unduly invaded his privacy. Though the "knock-and-announce" rule is designed to protect the privacy rights of an individual, a party's privacy right is necessarily limited once the warrant has been issued. As such, the importance of the rule deals not with fostering complete privacy but granting an opportunity for the party to prepare for an outside intrusion. The two police officers arrived at Floor's front door only to discover that the front door was already open. Bar-

nett opened the door to converse with the two officers. "Inasmuch as the occupant then had no right to refuse the officer admission [once the door was open and authority and purpose announced], no interest served by the knock and announce statute would be furthered by requiring the officer[s] to stand at the open doorway for [a period of time] in order to determine whether the occupant means to admit [them]." *United States v. Kemp*, 12 F.3d 1140, 1142 (D.C.Cir.1994) (construing federal "knock-and-announce" statute). Any claim to privacy is effectively abandoned by voluntarily opening the door and affording strangers an unimpeded view inside.

■ ¶ 15 Floor's claim that the police used unnecessary violence on him and the other occupants of the house is completely without merit.

> When the police and the occupant of a dwelling face each other through an open doorway and the police announce their purpose before entering, any violence that might ensue between the occupant and the officers is not attributable to surprise and is not likely to be averted by the police standing around [for several seconds].

*Id.* at 1142. We are not convinced that the police in this case accomplished their purposes through the use of unnecessary force. Even where violence may have occurred, such a result could have been easily avoided had Floor and the other occupants of the house submitted peacefully to the legitimate authority of the police.

## CONCLUSION

¶ 16 Because the police officers established personal contact with one of the occupants of the home, announced their authority and purpose, and otherwise executed the warrant within the bounds of the law, we affirm the decision of the district court.

¶ 17 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge and RUSSELL W. BENCH, Associate Presiding Judge.